And we'll call the next case. 15-3355. People v. Kevin Mitchell. Both attorneys ready to proceed? Would you both step up then and identify yourselves for the record? Good morning. Janet Mahoney on behalf of the people of the state of Illinois. All right, Mr. Cerritos, Ms. Mahoney, each of you will have about 15 minutes to present your argument. Mr. Cerritos, for a minute, you can save out some time for your partner. Yes, Your Honor. May it please the Court, my name is Manuel Cerritos. I'm here this morning on behalf of Kevin Mitchell, who appeals his first-degree murder conviction. Because Your Honors are familiar with the facts, I will proceed directly to the issues presented. We have raised two issues on behalf of Mr. Mitchell. The issues are interrelated. The first issue asks, where it is undisputed that the murder occurred in Indiana, how did the state fail to accurately charge Mitchell with felony murder, using an appropriate predicate felony? And how did this ambiguity of its proof fail to meet its burden of proof? The second issue asks, was the jury adequately instructed, whether the state failed to provide any instruction as to the underlying aggravated kidnapping? The answers found in our record are twofold. The state tried to stretch the power to prosecute a crime that emphatically occurred in Indiana. And two, the jury was never adequately instructed about the underlying predicate for the felony murder, that being the aggravated kidnapping. The focus for our discussion this morning will be on the aggravated kidnapping, its theories and facts, and the jurisdictional statute. All this has come about because the state had launched their prosecution with their three theories of murder. I thought this was a felony murder only charge. Yes, Your Honor. Wasn't the felony based on aggravated kidnapping? Yes, Your Honor. And did the kidnapping occur in Illinois? No, Your Honor. It emphatically did not occur in Illinois. It occurred in Indiana. That was the state's proof. Wait a minute. The kidnapping occurred in Indiana? I'm sorry. I'm sorry. I'm speaking of the murder itself. Okay, the murder is based on the aggravated kidnapping. The kidnapping occurred in Illinois. Yes, Your Honor. The jurisdictional statute says that if the offense is committed wholly or partly. Does it not? Yes, Your Honor. Okay, so how is the felony murder not wholly or partly committed in Illinois? Well, in two fashions. The first one is that the allegation does not comply with the jurisdictional statute. It just. Wholly or partly, what does that mean? Wholly or partly, we're speaking of the aggravated kidnapping. But the aggravated kidnapping occurred and finished in Illinois. How do you get there? If I may proceed. Well, this occurs because all those cases, all the counts, intentional strong possibility. The state knew that the murder occurred in Indiana. The state had also nollied all the aggravated kidnapping. Because of the Illinois Supreme Court cases. All of the aggravated kidnapping? Yes, Your Honor. They nollied. They didn't nollie all of them, did they? Oh, yes, they did. They left the felony murder standing. Standing alone. So with the. The felony murder is what? It's a murder that results because you committed an underlying felony. Yes, Your Honor. And that underlying felony occurred in Illinois. But because of the. That underlying felony occurred in Illinois and ended in Illinois. How did it end in Illinois? Well. You're saying he was killed in Indiana? Yes, Your Honor. Okay. So was he taken to Indiana and killed? He was taken to. Yes. So how did the kidnapping end in Illinois if he was taken to Indiana? I would start my discussion with what aggravated kidnapping counts were nollied. You said they were all nollied. But they were all charged. Aspirtation. There were multiple. So they're back on the table. Okay. So. But if you look at the aggravated kidnapping, look at the facts. The facts are simply this. Can I stop you for a second? Because the kidnapping happens in Illinois. Yes, Your Honor. And there's negotiations or alleged negotiations going on, right, with the brother. See, all the acts that constituted the aggravated. No, no, no. Let me ask you a question. We're completed. I'll get to my question, right, because you don't know my question. Yes, Your Honor. Okay. Okay. Okay. So there's negotiations with the brother, and in the midst of all of that, the individuals that are holding the other brother kidnapped, right, believe that maybe he contacted authorities. They had him in the van. They're moving along in the van, and then they proceed to go into Indiana. At the time, they thought that they were still kidnapping him, but they also believed that they might be able to still contact him and try to get some ransom. Excuse me, Your Honor. The key point that you're omitting is that the acts that constituted the aggravated kidnapping ended in Illinois. Counsel, wait a minute. How can you possibly say that? He was transported from Illinois to Indiana. Was he alive? The acts that constituted, okay, the counts that were charged were aggravated kidnapping. What made it aggravating was the armed robbery, which ended in Illinois. Armed robbery, the ransom, which ended in Illinois. There were no acts. After they left their building, there were no acts that would support ransom. The distinct evidence was the die was cast. Ransom is over. I think you need to look at the record, because I think the record shows that they had him in the van. In the van, they were beating him up because they thought, well, if they beat him up, the other brother would be more susceptible to maybe providing him with some ransom, right? So, you know, they still had him in the van when they crossed into the Indiana border. To use the correct transactional analysis, when a felony occurs and they reach a safe point, that ends that felony. And that safe point. What was the safe point? The safe point was when they brought it back to either their bedding house or the defendant's mother's basement. That's the safe point. Aren't you making a determination that a jury makes? You're making this determination now. I mean, that's not what the record shows. Well, you're bleeding into the next issue. You want to know about jurisdiction? I don't think there's anything to support your conclusion that everything ended in Illinois. I mean, you're just saying that. Well, case law says that as well. It's within the fabric of Illinois. Are you using robbery case law to say that a kidnapping ended? No. What case do you have that says that this kidnapping ended in Illinois? In preparing for this argument, I have to respond to every reasonable hypothetical drawn from the facts. And Illinois provides that when a crime occurs, that crime is ongoing until the safe point. That's people versus Bongiorno, people versus Hickman. If you're honest, I'll give you the safe. No. What is the safe point? The safe point is when it got to. No. What does the law say the safe point is? Give us the definition. The safe point is where the crime ends. The safe point is their home, is their abandoned building. Okay. So weren't they transporting him to Indiana to kill him there? Well, if you're honest, that's very what Moreland and Blank were talking about. Moreland was a case decided by this court in 1997, and it offers two propositions. In that case, the defendant was running a drug business. He felt that the victim was stealing. He wanted to punish her. He committed sexual assault. He put her in the victim's car, and she was found dead in Illinois. That transaction occurred in Indiana and on to Illinois. This court said the armed robbery was ongoing. But, and you can see that. The woman was placed in a trunk. Her car was taken, and it was ongoing into Illinois. But the court vacated the criminal sexual assault because the vibe I'm getting from this panel is that it's a caravan of evil that just continues. It omits the law. Because in Moreland, the court rejected this common design of criminality because the court said the murder, just because it shares an alleged common purpose, you need some overt acts. And that also echoes Holt. So, I don't mean to interrupt you, but getting back to Justice McBride's question, how do you define what the safe point, not the physical location, but for the purposes of this case, how do we determine where the safe point is? How do you define safe point? Well, if you look at the facts, the safe point appears to be where they are safe. I'm not trying to be flippant. No, I'm asking that location-wise, but in terms of us being able to understand what the definition of safe point is. The safe point was at 3900 West Maple. That's where the abandoned building was, or their mother's house. That occurred in Illinois. That's where the armed robbery was completed. We're not talking about armed robbery. This is not an armed robbery. This is an aggravated kidnapping case. What made the aggravated kidnapping aggravated? That was armed robbery, ransom, and a felonious intent. And that violates Morgan. You have to have an independent felonious purpose if it's going to be a predicate. Are you trying to say that he wasn't kidnapped and taken to Indiana? No, Your Honor. Was he or wasn't he? You have to look at the indictment. And what does the indictment say? What does the evidence say? Does the evidence show that he was kidnapped and taken from Chicago to Indiana? And how is the jury supposed to discern the evidence? Because they are charged with a duty. Are you claiming a reasonable doubt or something on the aggravated kidnapping, or the felony murder, rather? Well, jurisdiction is an element. Yes, absolutely. Let's just clear this up. You're not suggesting that the circuit court lacked jurisdiction. You're claiming, aren't you, that the state did not have jurisdiction to prosecute? Yes, Your Honor. All right. The court always says jurisdiction determines jurisdiction. Our challenge goes to whether the state has the ability to charge a murder that occurred in Indiana based on acts that were started and completed in Illinois. Now, you may mention of the felonious, well, I may mention of that. See, it all goes back to the charges of aggravated kidnapping. There are eight charges. Six were infirmed. In our view, the ransom was over in Illinois, completed. There was no other acts that perpetuated this ransom. The die was cast in Illinois. The armed robbery, they ransacked the cell phone, the paper store. They took the man's wallet. It all ended in Illinois. So he was charged with two counts of ransom, two counts of armed robbery, and then two counts of first-degree murder for aggravated battery. So we've got six counts of the eight aggravated kidnapping that were inappropriate. Now, how is a jury? They're not even instructed on what constitutes aggravated battery. They weren't instructed as to the IPI is very specific. When a person is accused, is charged with various forms of aggravated kidnapping, they should be given instructions, and they were not. All they were given is how the three types of aggravated kidnapping, how were they performed. That's clearly inadequate. Why is it inadequate? Because they were only instructed as to felony murder had given kidnapping. This is an essential element of felony murder. They were instructed as to the definition of aggravated kidnapping. They were instructed that there were three types of aggravated kidnapping, but none of the underlying elements. They weren't one charge of great bodily harm. They weren't instructed per IPI. They weren't instructed as to what great bodily harm. They weren't instructed on what constitutes a ransom by kidnapping. It was just a, you know. You believe every word should be defined. Is that what you're telling us? We should write that every word should be defined? Of course not, Your Honor. Things that are ordinary, the people have to be defined? Well, the state asserts that a kidnapping, you can understand, anyone can understand kidnapping, but it's like robbery. It's like burglary. It's a taking. But here, we're not just talking about exploitation and secret confinement. The state argued all these other things, ransom, firearm. Well, people don't know what ransom, what the word ransom means. It has to be defined. The IPI provides that those. Do we define reasonable care? Do we define such words? I mean, reasonable is in the eyes of what the jury finds it to be. Ransom, people watch television, they read, they see. We all know what ransom means. Well, this is an essential element, Your Honor, essential element of how they charge aggravated kidnapping. And, of course, reasonable doubt is the reason it's not defined. Would that change the verdict in any manner? Well, it means the jury didn't have enough to decide the facts based on the law they were given, and they were not given any law. Isn't, to Justice Gordon's point, doesn't the Edwards case sort of support what happened here because the terms like battery and robbery are commonly understood, and kidnapping is a commonly understood term? Your Honor, in my response to Justice Gordon, the state didn't argue just secret confinement or exportation. They argued the whole array of aggravated kidnapping. And how is the jury supposed to decipher it without instruction? Well, because kidnapping is defined in the dictionary as to seize or detain or carry away by unlawful force abroad, or, and often with a demand for ransom. I mean, people understand these terms. This is very similar to the Edwards case and also to McClendon. The jury instructions here provide sufficient information to the jury. The state also charged, which aggravated kidnapping is this predicated on? Do we know? I'm not sure what your argument is. This is your second argument. You're saying that there's valid counts here. Well, I'm just saying that these other cases where there was an aggravated battery or an arms robbery, the court concluded that the terms robbery and the term battery are so well understood that the jury wasn't misled in any way as to what those offenses were, similarly to kidnapping, which most people understand is the taking of a person from one place to another. And in this case, I mean, you're saying that kidnapping stopped in Illinois, but there's really nothing in the record that supports that claim. Because he was taken from Chicago. He was brought to a house, but then after the house, he was brought to the state of Indiana. But you're saying, no, he wasn't brought to Indiana. But he was. I never said that. What was the charge? He was kidnapped from Illinois to Indiana. There's no question in this record that he was taken from Chicago, went to one house, and then from there he was taken to the state of Indiana. Is there any dispute about that? This was not an – your honors are saying this is a continuous offense. It is not. The kidnapping didn't stop. There's no such delineation here in the record that he wasn't kidnapped and taken to Indiana. Let's talk about one count, one theory, ransom. How did aggravated kidnapping was based on a ransom? How was that ransom perpetuated in Indiana? There's no testimony that suggests that the ransom suddenly ended. Oh, yes, it was. It was, your honor. That's something you're saying could be argued from the evidence. No, this is the evidence. This is the evidence. Because the co-defendant said there were two co-defendants that testified. Sure. And they said when they were spooked by seeing Crown Victorious behind them, and they went back there. They went back to the hideout, and they called the decedent's brother and said, you just killed your brother. Yeah, make arrangements for his funeral. Make arrangements for the funeral. So, therefore, everything ended. How in the world is that possible? That's the safe point. How in the world is ransom – that count continued? I think we understand your position. Do you want to add anything else? Because you want to have some time for rebuttal, don't you? Yes, your honor. All right. Ms. Mahoney. Good morning. Janet Mahoney on behalf of the people of the state of Illinois. Good morning. Counsel raised the question today about whether the people proved jurisdiction beyond a reasonable doubt. And in order to put this all in perspective, I think it's really important that we start with the Holt case, which was in 1982 that kind of started this whole question. And in that case, the victim was kidnapped in Illinois, driven into Wisconsin, where she was sexually assaulted and strangled and murdered. And in that case, the Illinois Supreme Court – it was a felony murder case. Holt. Holt. Holt. And in that case, the Illinois Supreme Court said in that felony murder case, that predicate felony of kidnapping in Illinois did not confer jurisdiction in Illinois based on the jurisdiction statute that existed at that time. The court stated that there needed to be an intrinsic relationship between the predicate felony and the murder and did not find it in that case. After the Holt case, the statute was amended. And that is a very important thing to note here. It was amended to allow for the attempt or commission of a predicate offense in Illinois to confer jurisdiction in Illinois. Now, some courts have kind of overlooked this change and not acknowledged the change in the statute. And they discuss that intrinsic relationship concept from Holt. This case gives this court the opportunity to acknowledge the change in statute and gives you the opportunity to align the case law with the statute that existed at the time that this offense happened. And this statute that existed at the time of this offense allowed for the attempt or commission of a predicate offense in Illinois to confer jurisdiction in Illinois. And you argued this in your brief. I did. And so all of the talk about where this aggravated kidnapping began and ended is really unnecessary because all we needed was for it to be attempted here. It didn't need to be attempt or commission. So with that attempt language, it allows for these continuing offenses like kidnapping, like the kidnapping in Holt, that allows you to confer jurisdiction in Illinois. The goal was to have a broad jurisdictional base because Illinois. Can we clarify here? We're not talking about the circuit court jurisdiction. We're talking about the state's ability to prosecute. The state has to prove that the prosecuting body has jurisdiction to try and convict someone in Illinois. We're not talking about whether the circuit court had jurisdiction. Correct? Correct. I just wanted to clarify that so that we all understand this is not a case about jurisdiction of a circuit court. It's about the jurisdiction of whether or not the prosecuting body has jurisdiction by proving that there was either this attempt or commission of the underlying offense to give the state the jurisdiction to prosecute this offender in Illinois. Absolutely. And sometimes courts will refer to that as geographical jurisdiction so that it doesn't get muddled with subject matter or personal jurisdiction. We should be careful to do that ourselves. Correct. And very careful to note the change in the statute because when you research the issue and you are directed to the Holt case, there isn't a case out there that acknowledges the change in the statute, and perhaps that's what helps muddy the waters. This case is clear. Illinois had jurisdiction over this case simply because he took this victim from Illinois and drove them to Indiana. Was the Moreland case decided before the change in the statute? I have that. Well, because you said there's really no case out there that really clarifies the legislative change. Correct. And I was just curious in looking at that case whether... I'm not finding it right at the second, but... We'll resolve that.  Right. I think we all understand what you're saying. Okay. And as to the third issue, the instruction issue, so the jury was given the instruction on felony murder, the issues, and the definitional. The jury was given the definitional instruction on aggravated kidnapping. The jury was not given the definitional instruction on kidnapping, and that's what we're dealing with. And we're also dealing with this issue from the perspective of forfeiture. Right. So... There was no instruction tender. There was no objection to the court not giving the instruction of kidnapping. Correct. Correct. But there was no... No extra motion either. Nothing. So there's no... But there was no kidnapping definition, and that's all we needed to do was give the definition of kidnapping. So the question is, was that grave error? The state's position is not grave error for two reasons. One, this isn't an element of the offense. It's the predicate felony. It's not an element of the offense. The second point is that this is any gap in the instruction can be filled in with what we know about what kidnapping is. And as to any of those other questions that were brought up by counsel during argument about the question of what ransom means, everybody knows what they mean. As a matter of fact, the definition, as you noted, of kidnapping from the instructions is the same as it is in the dictionary. And that alone shows that there isn't any grave error here. And there was no confusion with the jury, no notes or anything, asking for any definitions? No confusion by the jury. And as a matter of fact, in addition to being not grave error, there's no way that this jury convicted the defendant because they were confused in light of the overwhelming evidence we had in this case. So there was no grave error with this instruction, and a forfeiture should not be excused. Unless the court has any other questions? No. We ask you to affirm the conviction and sentence. All right. Thank you. Very briefly, Your Honors. The state errors erred in its brief, and the state errors in oral argument. The partly or fully committed in Illinois language from the jurisdictional statute was present before Holt. That's not what Ms. Mahoney is talking about. She's talking about attempt or committed. Yes. The statute was changed after Holt. So why don't you confine yourself to telling us why the amendment doesn't change anything? Not about wholly or partly. Simply about attempted or committed. Well, the statute was changed in paragraph B, second sentence. And that second sentence was directed at the felony murder situation. And that language effectuated what Holt decided. The Holt was concerned about was the emphasis is in Holt. The Holt court said they were concerned about the conduct. Not some conduct or any conduct. They were concerned about the conduct. And that's the emphasis in the Holt decision in two parts. Again, I'm sorry. I would beg to differ. That's the thing that was amended. Not that it was partly or partially committed in Illinois. That was with ñ and Moreland was decided after the amendment. Well, when they said to the brother, you just caused your brother's funeral or get ready to pay for the funeral expenses, I don't know, was that an attempt to commit murder in Illinois? Even if it was. No, Your Honor, because Holt rejected that. Holt rejected that. Holt was decided before the amendment. And the amendment effectuated the Holt decision. What do you mean? Wasn't the amendment rejecting Holt? Wasn't there a dissent in Holt, a vigorous dissent, and wasn't the statute amended to address the decision that Holt issued? At 48.7 and 48.8, the court emphasizes the conduct. And that's the phrase that the statute uses. It just reaffirmed the statement. The amendment was to reaffirm Holt. Yes. Yes, because the state argued in Holt, well, it was a continuing defense. It's like they're arguing theory. You're saying it was to reaffirm, not to expand? To put a fine point in the Holt decision, the amendment, because the state argued in Holt that the gravamen of the bad acts was the murder. And the Holt court said what we're looking at is the conduct. And that conduct is never spelled out in our case, and it was never proven. And if there's no confusion by the jury, if there's no jury notes, well, the jury thinks everything is hunky-dory because they didn't get instructed. How are they supposed to know what they don't know? Well, you're just making an assumption that they don't know. See, that's what you're doing. You're making an assumption that they don't know. There's no evidence that they don't know. It's common things. In Hines, this court was faced with armed violence, and the jury could have convicted them in an inappropriate way or a correct way. And this court said we will not speculate as to how the jury makes the decision. We're not going to speculate that they did it the right way. It was reversed. And I'm saying to this court that you can't be sure how this jury arrived at its verdict, how they deliberated on the facts that were given. But there was another trial. Do you think the result would be different? I dare say I'm not going to speculate because, well, I hope so. Based on the evidence of the case. Well, you have to do that under the plain error, don't you? Yes, it's plain error. You have the burden of persuasion to show that the error was so significant that it would likely change the outcome. Yes, it's a plain error case. I argue that. So how's the verdict going to be any different? What's he going to say, he didn't do it? I'm arguing the second prong. It's not closely balanced. What we're arguing is the fairness of the trial. And just as a caveat here, we have a pro se defendant that was representing himself. Now, I'm not saying we're going to cut this guy flat. Well, what I am saying is that this was a runaway train that was not helped by the prosecution and the court was duty bound to instruct correctly. Our system is a system of laws, and it's just not good enough to say that we cleared out alleged evildoers off the street. It has to follow the law. The law was not followed, and we asked this court to find that the jurisdiction was not proven in this case or in the alternative that Mr. Mitchell was denied a fair trial. All right. Thank you both. The case was well argued, well briefed, and we will take it under advisement. And the court stands adjourned.